UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                             :
MTHREE CORPORATE CONSULTING                                  :
LIMITED D/B/A WILEY EDGE,                                    :    **ORDER DENYING MOTION**
                                                             :    **FOR PRELIMINARY**
                                      Plaintiff,             :    **INJUNCTION**
             -against-                                       :
                                                             :    22 Civ. 7158 (AKH)
CHRISTOPHER WASCAK and ROBERT                                :
ROLLE,                                                       :
                                                             :
                                      Defendants.            :
------------------------------------------------------------ X

ALVIN K. HELLERSTEIN, U.S.D.J.:

    Plaintiff MThree Corporate Consulting Ltd. d/b/a Wiley Edge ("Plaintiff") brings this suit against its now-former[1] employees, Defendants Christopher Wascak ("Wascak") and Robert Rolle ("Rolle"), (collectively "Defendants"), seeking preliminary and permanent injunctive relief to prevent Defendants from violating the noncompete and nonsolicitation obligations as described in their respective employment agreements (the "Employment Agreements") and Wascak's Restricted Share Unit Grant Agreements ("RSU Grant Agreements"). (Complaint ("Compl."), ECF No. 1; Ex. A ("Wascak Empl. Agmt.") ECF No. 1-1; Ex. B ("Wascak RSU Grant Agmt."), ECF No. 1-2; Ex. C ("Rolle Empl. Agmt."), ECF No. 1-3.)

---

[1] The parties dispute the effective resignation date for Wascak who gave notice of termination on June 1, 2022. His employment agreement appears to require Wascak to give 90 days' notice of termination, triggering an effective resignation date of August 31, 2022. See ECF No. 1-A. Wascak took the position, however, that no notice was required and informed Plaintiff that he intended to make his resignation official as of July 19, 2022. Thus, when Plaintiff brought suit on August 22, 2022, Wascak may or may not have remained in Plaintiff's employ. In the interim, the August 31, 2022 date has passed and, therefore, no matter which date applies, Wascak is no longer an employee.

1

Plaintiff is a New York-based education and staffing services provider that focuses on a hire, train, and deploy business model, through which it identifies talented individuals coming out of colleges or universities ("Alumni"), hires them directly, provides practical training geared toward technical jobs, and places them with Plaintiff's clients, which include large financial institutions, technology companies, and government agencies. Plaintiff obtains new clients by responding to and winning Requests for Proposal ("RFP").

Wascak was hired as the Director – Head of Business Development, North America on February 21, 2019, and was subsequently promoted to Senior Director on November 1, 2021, expanding his responsibilities globally. Wascak helped develop the curriculum for training alumni and received a percentage of the revenue for every alum he incentivized to bring into the program. He also helped develop pitch decks and sales strategies to sell Plaintiff's business model to prospective clients and was responsible for hundreds of pitches and presentations. In addition, Wascak participated in meetings with upper management to strategize on business expansion and how best to position Plaintiff given current market demands, including a recent initiative relating to minority and underserved communities.

Rolle was hired as Business Development Director on January 8, 2020. He reported to Wascak and was responsible for initial client outreach. In early 2021, Plaintiff carved out an internal sales team, and Rolle, as head of global sales, oversaw the four or five-person sales team and helped create the scripts, forms, and training materials that the team used.

At the time of their respective hiring, both Defendants signed Employment Agreements with materially similar provisions. Both agreed to at-will employment, terminable at will by employer or employee, with or without cause. Notwithstanding the at-will nature of their employment, however, a separate clause in their Employment Agreements provided that

after six months of service, Wascak was required to give 90 days' notice and Wolle 30 days' notice, during which time Defendants would continue to receive a salary. Wascak Empl. Agmt. ¶ 11; Rolle Empl. Agmt. ¶ 12. The Employment Agreements also included identical restrictive covenants. Both Defendants agreed not to compete with Plaintiff, directly or indirectly, in the New York Metropolitan Area or 50 miles therefrom, for a period of six months following their termination. They also agreed not to interfere with Plaintiff's business for a period of twelve months following their termination, with interfering activities defined to include soliciting or hiring Plaintiff's current employees (or employees within the past 12 months) and soliciting business from actual or prospective clients of Plaintiff, for which Defendants originated or serviced or otherwise acquired confidential information, but only where Plaintiff continued to provide services in the geographical area where the client does business.

On June 1, 2022, Wascak gave notice of termination; Rolle followed suit on June 27, 2022. Based on the respective notice provisions, Wascak's resignation would become effective August 31, 2022 and Rolle's July 26, 2022. Plaintiff accepted their resignations and reminded Defendants of their continuing obligations under their restrictive covenants. However, on July 19, 2022, both Wascak and Rolle took the position that no notice was required and informed Plaintiff that they intended their resignation to be effective that same day. Plaintiff did not accept these terms and again reminded Defendants of their continuing obligations and sought confirmation that Defendants would comply.

On July 28, 2022, Wascak and Rolle incorporated a new company in North Carolina called HTD Talent, which according to a July 29, 2022 press release, would employ the same "hire, train, and deploy" model utilized by Plaintiff and target minority and

underrepresented communities. (ECF No. 5-14 (Press Release)). The press release further touted that HTD Talent had already received an initial private investment of $5 million dollars.

On August 22, 2022, Plaintiff brought this suit, asserting state-law claims for breach of contract and breach of the duty of loyalty and the faithful servant doctrine; and a federal claim for misappropriation of trade secrets and confidential information, pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.*; and sought injunctive and declaratory relief. Plaintiff simultaneously moved for emergency relief in the form of a temporary restraining order ("TRO") and preliminary injunction ("PI"), (ECF Nos. 1, 2, 4.), asking me to enjoin Defendants from: (i) operating HTD Talent for the twelve-month period following their respective resignations; (ii) breaching their respective Employment Agreements, including the nonsolicitation provisions; and (iii) using, disclosing, or misappropriating Plaintiff's trade secret information.

I denied Plaintiff's request for a TRO, but set an expedited briefing schedule leading to a hearing of the motion for preliminary injunction. Having reviewed the parties' submissions, I find that Plaintiff has failed to establish that it is entitled to preliminary injunctive relief. Accordingly, the motion for preliminary injunction is denied.

Under Fed. R. Civ. P. 65, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42, 58 (citing *Winter v. NRDC, Inc.*, 557 U.S. 7, 20 (2008)). Plaintiff has failed to establish a likelihood of success on the merits or that it has or will likely suffer irreparable injury.

Plaintiff claims that it is likely to succeed on the merits of its breach of contract claim because Defendants have disavowed their obligations under the restrictive covenants in their Employment Agreements, and in establishing a competing business, using Plaintiff's business model and strategy. However, Plaintiff, in the absence of factual discovery, has not shown a breach by defendants. Defendants have established a new business in North Carolina, plainly beyond the geographic scope delineated in the Employment Agreements, and has failed to show that the business is operating, or is intended to operate, within the geographical area of the restrictive covenants.

Plaintiff alternatively argues that, in establishing a competing business, Defendants have "irrefutably already breached" by anticipatorily repudiating their restrictive covenants. *See* Reply at 16, 16 n.6, ECF No. 13. Anticipatory repudiation occurs when, before the time for performance has arisen, a party to a contract declares his intention not to fulfill a contractual duty. *See Lucente v. IBM*, 310 F.3d 243, 258 (2d Cir. 2002); *Norcon Power Partners v. Niagara Mohawk Power Corp.*, 92 N.Y.2d 458 (1998). Under New York law,[2] when one party anticipatorily breaches an executory contract, the nonbreaching party has a choice. It may treat the entire contract as broken—relieving the nonbreaching party of any continuing obligation to perform—and sue immediately; or, it may reject the proposed breach, continue to treat the contract as valid, wait for the time performance comes due, and sue once the proposed breach has materialized. *See Inter-Power of New York, Inc. v. Niagara Mohawk Power Corp.*, 259 A.D.2d 932, 934 (3d Dep't 1999). The nonbreaching party must make an affirmative election and cannot "at the same time treat the contract as broken and subsisting." *Id.*

---

[2] Pursuant to the choice of law provision in the Employment Agreements, New York law applies. Wascak Empl. Agmt., Confidentiality, Restrictive Covenant and Inventions Agreement § D.2; Rolle Empl. Agmt., Confidentiality, Restrictive Covenant and Inventions Agreement § D.2.

Plaintiff's theory of anticipatory repudiation fails because it seeks to treat the Employment Agreements as both broken and subsisting. If Plaintiff chose to treat Defendants' incorporation of a new business as a breach, this rendered the contracts null and void and deprived Plaintiff of the right to sue to enforce the terms of the contract. Plaintiff's sole remedy was a suit for damages. However, the evidence indicates that Plaintiff did not treat Defendants' conduct as a breach. Plaintiff twice advised Defendants of their continuing obligations—once after Defendants gave notice of termination and again after Defendants sought to make their resignations effective early. Plaintiff believed then, and continues to assert, that the restrictive covenants are valid and enforceable. Indeed, Plaintiff asks me to enjoin Defendants from violating their restrictive covenants—a remedy that would be available only if the Employment Agreements are "subsisting."

Plaintiff also has not shown that Defendants have misappropriated information that is confidential, proprietary, or subject to protection as trade secrets. To date, Defendants merely have started a business that operates in the same field and employs a business model not unique to Plaintiff. Plaintiff obtains new clients via public RFPs; those clients are large and well-known financial institutions and companies around the world; and their identities and key contacts are available in the public domain and thus not protectable as trade secrets. *See Reed, Roberts Assocs., Inc. v. Strauman*, 40 N.Y.2d 303, 308 (1976) (finding no "trade secret protection" where former employer's past or prospective customer names can be readily ascertained from sources outside its business); *Briskin v. All Seasons Servs.*, 206 A.D.2d 906, 907 (App. Div. 4th Dep't 1994) (refusing to enforce a restrictive covenant where the identify of potential customers could be obtained from the yellow pages of the telephone book even where the employer's price structure varied with the preferences and needs of individual customers).

Although Plaintiff alleges that Defendants have intimate knowledge of and helped develop sales strategies, Plaintiff has not shown that this information is unique to Plaintiff or different in kind to information that other staffing or recruitment professionals might possess. *See Reed, Roberts Assocs., Inc.*, 40 N.Y.2d at 309 (finding "knowledge of intricacies of . . . business operation" not trade secrets); *see Sales Strategies Grp., Inc. v. Fenton*, 838 N.Y.S.2d 856, 858 (Sup. Ct. 2007) (holding that "once they have been used, sales pitches are not treated as trade secrets"). In short, the evidence of breach is not more than speculation.

In addition, Plaintiff has not shown irreparable harm. Again, Plaintiff offers no evidence that Defendants have or intend to compete with Plaintiff within the applicable geographic scope or that Defendants have solicited any of Plaintiff's employees or customers. Plaintiff has not shown present loss of business or goodwill, nor has it offered evidence of likely future loss. Although courts in this Circuit presume irreparable harm if a trade secret has been misappropriated, *see North Atlantic Instruments, Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999), as discussed above, Plaintiff has not shown that Defendants are in possession of Plaintiff's trade secrets.[3]

---

[3] The only possible unlawful conduct to date is Defendants' unilateral attempts to make their resignations effective earlier than may have been required under their Employment Agreements. If Defendants continued receiving a salary during this leave period, Plaintiff may be entitled to recover any monies paid. *But see Walter Karl, Inc. v. Wood*, 137 A.D.2d 22, 28 (1988) (holding that preparing to compete not improper where there was no evidence that the new business incorporated by defendant conducted any business prior to the date his employment terminated). Because this harm is compensable in money damages, however, it does not constitute irreparable injury and does not warrant injunctive relief.

Because Plaintiff has failed to establish either a likelihood of success on the merits or irreparable injury, the motion for a preliminary injunction is denied. Defendants shall answer or otherwise respond to the complaint by September 30, 2022. The parties shall appear for a status conference on October 28, 2022, at 10 a.m. The Clerk of Court shall terminate the motion (ECF Nos. 1, 4).

SO ORDERED.

Dated:   September 6, 2022
         New York, New York

ALVIN K. HELLERSTEIN
United States District Judge