UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X
                                                         :
MTHREE CORPORATE CONSULTING                              :
LIMITED D/B/A WILEY EDGE,                                :       **ORDER GRANTING MOTION**
                                                         :       **TO DISMISS FOR FAILURE TO**
                                            Plaintiff,   :       **STATE A CLAIM**
                   -against-                             :
                                                         :       22 Civ. 7158 (AKH)
CHRISTOPHER WASCAK and ROBERT                            :
ROLLE,                                                   :
                                                         :
                                          Defendants.    :
-------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

   Plaintiff MThree Corporate Consulting Ltd. d/b/a Wiley Edge ("Plaintiff") brings

this suit against its now-former employees, Defendants Christopher Wascak ("Wascak") and

Robert Rolle ("Rolle"), (collectively "Defendants"), seeking declaratory and injunctive relief to

prevent Defendants from violating the noncompete and nonsolicitation obligations as described

in their respective employment agreements (the "Employment Agreements") and Wascak's

Restricted Share Unit Grant Agreements ("RSU Grant Agreements").  (Complaint ("Compl."),

ECF No. 1; Ex. A ("Wascak Empl. Agmt.") ECF No. 1-1; Ex. B ("Wascak RSU Grant Agmt."),

ECF No. 1-2; Ex. C ("Rolle Empl. Agmt."), ECF No. 1-3.)  Defendants move to dismiss for

failure to state a claim upon which relief may be granted (R. 12(b)(6)).  (ECF No. 17).  For the

reasons discussed below, Defendants' motion to dismiss for failure to state a claim is granted.

## BACKGROUND

   The following facts are taken from the Complaint, which I must "accept[] as true"

for the purpose of this motion.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff is a New

York-based education and staffing services provider that focuses on a hire, train, and deploy

business model, through which it identifies talented individuals coming out of colleges or universities ("Alumni"), hires them directly, provides practical training geared toward technical jobs, and places them with Plaintiff's clients, which include large financial institutions, technology companies, and government agencies. *See* Complaint ("Compl.") ¶¶ 7–10. Plaintiff obtains new clients by responding to and winning Requests for Proposal ("RFP"). *Id.* ¶ 24.

On February 21, 2019, Wascak was hired as the Director – Head of Business Development, North America. *Id.* ¶ 17. He was subsequently promoted to Senior Director on November 1, 2021, expanding his responsibilities globally. *Id.* ¶ 23. Wascak helped develop the curriculum for training alumni and received a percentage of the revenue for every alum he incentivized to bring into the program. *Id.* ¶¶ 21, 36. He also helped develop pitch decks and sales strategies to sell Plaintiff's business model to prospective clients and was responsible for hundreds of pitches and presentations. *Id.* ¶¶ 24–26. In addition, Wascak participated in meetings with upper management to strategize on business expansion and how best to position Plaintiff given current market demands, including a recent initiative relating to minority and underserved communities. *Id.* ¶ 30.

Rolle was hired as Business Development Director on January 8, 2020. *Id.* ¶ 40. He reported to Wascak and was responsible for initial client outreach. *Id.* ¶ 42. In early 2021, Plaintiff carved out an internal sales team, and Rolle, as head of global sales, oversaw the four or five-person sales team and helped create the scripts, forms, and training materials that the team used. *Id.* ¶ 43–44.

At the time of their respective hiring, both Defendants signed Employment Agreements with materially similar provisions. *Id.* ¶¶ 18, 41. Their respective Employment Agreements provided that their employment was at will and subject to termination by either

party at any time for any reason with or without cause or notice.  Wascak Empl. Agmt. ¶ 10;

Rolle Empl. Agmt. ¶ 11.  However, the Agreements further modified the notice requirement.

Wascak's Employment Agreement provides that, "[n]otwithstanding the at-will nature of [his]

employment," during the first month of service, no notice of termination is required by either

party; during the following five months of service, 30 days' written notice of termination; and

from six months onward, both parties are required to provide 90 days' written notice of

termination.  Wascak Empl. Agmt. ¶ 11.  Rolle's Employment Agreement includes a similar

modification, but required only 7 days' written notice within the five months after the initial

month of service, and 30 days' written notice of termination from six months onward.  Rolle

Empl. Agmt. 12.

   Both Employment Agreements also included identical restrictive covenants.

Wascak Empl. Agmt., Confidentiality, Restrictive Covenant and Inventions Agreement

("Wascak Non-Compete"); Rolle Empl. Agmt., Confidentiality, Restrictive Covenant and

Inventions Agreement ("Rolle Non-Compete").  Both Defendants agreed not to compete with

Plaintiff, directly or indirectly, in the New York Metropolitan Area or 50 miles therefrom, for a

period of six months following their termination.  Wascak Non-Compete § C.1(a); Rolle Non-

Compete § C.1(a).  They also agreed not to interfere with Plaintiff's business for a period of

twelve months following their termination, with "Interfering Activities" defined to include

soliciting or hiring Plaintiff's current employees (or employees within the past 12 months) and

soliciting business from actual or prospective clients of Plaintiff, for which Defendants

originated or serviced or otherwise acquired confidential information, but only where Plaintiff

continued to provide services in the geographical area where the client does business.  Wascak

Non-Compete § C.1(b); Rolle Non-Compete § C.1(b).

Wascak's post-termination obligations were further constrained by provisions in two RSU Grant Agreements that he executed in September 2020 and December 2021, pursuant to which he agreed that during his employment and one year thereafter not to (i) induce or attempt to induce any employee of [Plaintiff] to leave the employ of [Plaintiff] or otherwise interfere with the relationship between [Plaintiff] and any employee, (ii) hire any person who was an employee of [Plaintiff] at any time during the last twelve months, or (iii) induce or attempt to induce any customer, supplier, licensee, licensor, franchisee or other business relation of [Plaintiff] or any affiliate to cease doing business with [Plaintiff]."  Wascak RSU Grant Agmt. § 4(b).

On June 1, 2022, Wascak gave notice of termination; Rolle followed suit on June 27, 2022.  Compl.  ¶ 52.  Based on the respective notice provisions, Wascak's resignation would become effective August 31, 2022 and Rolle's July 26, 2022.  *Id.* ¶¶ 56–57.  Plaintiff accepted their resignations and reminded Defendants of their continuing obligations under their restrictive covenants.  *Id.* ¶ 53.  However, on July 19, 2022, both Wascak and Rolle took the position that no notice was required and informed Plaintiff that they intended their resignation to be effective that same day.  *Id.* ¶¶ 55, 58.  Plaintiff did not accept these terms and again reminded Defendants of their continuing obligations and sought confirmation that Defendants would comply.  *Id.* ¶¶ 56, 59.

On July 28, 2022, Wascak and Rolle incorporated a new company in North Carolina called HTD Talent, which according to a July 29, 2022 press release, would employ the same "hire, train, and deploy" model utilized by Plaintiff and target minority and underrepresented communities.  (ECF No. 5-14 (Press Release)).  The press release further

touted that HTD Talent had already received an initial private investment of $5 million dollars. *Id.*

On August 22, 2022, Plaintiff brought this suit, asserting state-law claims for breach of contract and breach of the duty of loyalty and the faithful servant doctrine; and a federal claim for misappropriation of trade secrets and confidential information, pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.*; and sought injunctive and declaratory relief. Plaintiff simultaneously moved for emergency relief in the form of a temporary restraining order ("TRO") and preliminary injunction ("PI"), (ECF Nos. 1, 2, 4.), both of which were denied (ECF Nos. 9, 16).

Defendants filed a motion to dismiss on September 30, 2022. Having reviewed the parties' submissions, I find that Plaintiff has failed to plausibly allege the Defendants have breached the restrictive covenants, misappropriated trade secrets, or breached the fiduciary duty of loyalty. Accordingly, Defendants' motion to dismiss for failure to state a claim is granted.

## DISCUSSION

### I.   Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. A claim is facially plausible when it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.*

When considering a motion to dismiss a complaint under Rule 12, the Court must "accept[] all of the complaint's factual allegations as true and draw[] all reasonable inferences in

the plaintiff's favor." *See Katz v. Donna Karan Co. Store, L.L.C.*, 872 F.3d 114, 118 (2d Cir. 2017).  However, the Court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Id.*  The Court is limited to a "narrow universe of materials." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).  "Generally, [courts] do not look beyond 'facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken.'" *Id.* (quoting *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n. 2 (2d Cir. 2016)) (alterations in original).

II.   Analysis

   A.  Plaintiff's Claim for Defendants' Breach of the Employment Agreements and
       Wascak's Breach of the RSU Grant Agreements

          Plaintiff claims that Defendants violated the noncompete and nonsolicitation terms of their Employment Agreements, and that Wascak violated the restrictive covenants provisions of the RSU Grant Agreements.  *See* Compl. ¶¶ 87–98.  I hold that Plaintiff's failure to plausibly allege breach is fatal to their breach of contract claims.

          Under New York law,[1] to establish a claim for breach of contract, a plaintiff must show: (1) an agreement, (2) adequate performance by one party, (3) breach by the other party, and (4) resulting damages.  *See Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011) (cleaned up); *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008); *see also McCormick v. Favreau*, 82 A.D. 3d 1537, 1541 (N.Y. App. Div. 2011); *accord. Twinkle Play Corp. v. Alimar Props., Ltd.*, No. 2018-10896, 186 A.D.3d 1447, N.Y. App. Div. LEXIS 5008, at *1 (N.Y. App. Div. 2d Dep't Sept. 16, 2020).

---

[1] The Noncompete Agreements stipulate that New York Law shall govern.  Wascak Noncompete § D.2; Rolle Noncompete § D.2.

It is undisputed that there exist valid and enforceable employment agreements between Plaintiff and Defendants.  While the parties dispute the enforceability of the restrictive covenants under New York Law, the Court need not reach the issue of enforceability.  Assuming *arguendo* that the contract terms were enforceable under federal and state law, I find that Plaintiff has not plausibly alleged a breach by Defendants of the noncompetition or nonsolicitation provisions.[2]

Plaintiff argues that Defendants have breached the terms of their Employment Agreements by, "among other things, failing to abide by the restrictive covenant provisions and other obligations to the Company."  Compl. ¶ 89.  The Court will not speculate as to what Plaintiff intends to allege by citing to "other things;" such a vague allegation fails to provide "factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  With regard to the restrictive covenant provisions, Plaintiff has failed to allege facts which would constitute breach.  Defendants have established a new business in North Carolina, plainly beyond the geographic scope delineated in the noncompete provision.  Plaintiff offers no evidence that the business is operating, or is intended to operate, within the geographical area of the restrictive covenants.  Turning to the nonsolicitation provision, Plaintiff offers no evidence that Defendants solicited any of Plaintiff's current employees (or employees within the past 12 months) or solicited business from actual or prospective clients or customers of Plaintiff.  Moreover, the

---

[2] The only other breach that may have been plausibly alleged is based upon Defendants' unilateral attempts to make their resignations effective earlier than may have been required under their Employment Agreements.  If Defendants had continued receiving a salary during this leave period, Plaintiff may have been entitled to recover any monies paid. *But see Walter Karl, Inc. v. Wood*, 137 A.D.2d 22, 28 (1988) (holding that preparing to compete not improper where there was no evidence that the new business incorporated by defendant conducted any business prior to the date his employment terminated).  Because Plaintiff does not claim that Defendants continued receiving payments, damages have not been plausibly alleged.  Therefore, Plaintiff fails to plausibly allege breach based on early termination.

nonsolicitation provision is expressly limited to clients or customers for which Defendants originated or serviced or otherwise acquired confidential information, and only where Plaintiff continued to provide services in the geographical area where the client does business. Accordingly, Plaintiff has offered no specific allegations that Defendants have engaged in conduct that would violate the restrictive covenant provisions.

Plaintiff further argues that "Defendants *inevitably will* use Confidential and proprietary information . . . to wrongfully compete with the Company[,]" and that Defendants' intent to do so is "demonstrated by their overt position that the agreements are unenforceable and steadfast refusal to confirm they will comply." Mem. in Opp. at 18 (emphasis added). The Court will not entertain allegations of future breach supported by nothing more than Defendants' mere advancement of an argument that the contractual provisions are unenforceable. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). Plaintiff's speculation as to future breach by Defendants is insufficient to plausibly allege breach of contract.

Plaintiff additionally claims that Defendant Wascak breached the RSU Grant Awards by "failing to abide by the restrictive covenant provisions and other obligations to the Company." Compl. ¶ 95. However, Plaintiff has not presented any specific factual allegations that Wascak has "(i) induce[d] or attempt[ed] to induce any employee of [Plaintiff] to leave the employ of [Plaintiff] or otherwise interfere[d] with the relationship between [Plaintiff] and any employee, (ii) hire[d] any person who was an employee of [Plaintiff] at any time during the last twelve months, or (iii) induce[d] or attempt[ed] to induce any customer, supplier, licensee, licensor, franchisee or other business relation of [Plaintiff] or any affiliate to cease doing business with [Plaintiff]." Wascak RSU Grant Agmt. § 4(b). By failing to allege facts that

would constitute breach of the contractual terms, Plaintiff has presented the Court with nothing more than "conclusory allegations . . . masquerading as factual conclusions." *See Katz v. Donna Karan Co. Store, L.L.C.*, 872 F.3d 114, 118 (2d Cir. 2017).

In sum, Plaintiff has failed to assert factual allegations beyond conclusory statements that Defendants have breached their contracts.  "[A]llegations that merely parrot the language of the contractual provisions alleged to be breached without providing supporting facts are not presumed true." *Northwell Health, Inc. v. Lexington Insurance Company*, 550 F.Supp.3d 108, 115 (S.D.N.Y. 2021).  Accordingly, I find that Plaintiff has not plausibly alleged breach of contract as to the restrictive covenant provisions contained in either the Employment Agreements or the RSU Grant Agreement.

B.  Plaintiff's Claim for Breach of the Duty of Loyalty/Faithless Servant Doctrine

Plaintiff claims that Defendants breached their fiduciary duty of loyalty by "resigning and unilaterally attempting to shorten their garden leave period; planning to form and actually forming a direct competitor while still employed at the Company; and misappropriating the Company's confidential information and trade secrets."  Compl. ¶ 101.

In its opposition brief, Plaintiff cites to case law finding that a plausible allegation of "a pattern of disloyalty" can be sufficient at the summary judgment stage.  Mem. in Opp. at 33 (quoting *Pawlowski v. Kitchen Expressions, Inc.*, 2017 WL 10259773, at *8 (E.D.N.Y. Dec. 15, 2017)).  However, as Defendants note in their reply brief, the precedent cited by Plaintiff concerns a pattern of conduct *during* the defendant's period of employment, not after employment was terminated.  Here, Defendants incorporated their business over one month after terminating their employment with Plaintiff, and Plaintiff has failed to offer factual allegations demonstrating a pattern of disloyal conduct during Defendants' period of employment.

Additionally, mere preparation to compete does not violate the duty of loyalty where there is no evidence that the new business conducted any business prior to the termination of employment. *See Walter Karl, Inc. v. Wood*, 137 A.D.2d 22, 28 (1988).

      With regard to Plaintiff's faithless servant claim, that doctrine provides that "an employee who is faithless in the performance of services is not entitled to recover commission or salary." *Career Partners, Inc. v. Brady*, 2020 N.Y. Slip Op. 30151 (N.Y. Sup. Ct. 2020) (citing *Feiger v. Iral Jewelry, Ltd.*, 41 NY2d 928, 928 (1977)).  Mere preparation to compete "is not sufficient to invoke [the faithless servant] doctrine unless the employee also works less on behalf of the employer and misappropriates business secrets or special knowledge derived from the employer." *Id.* Additionally, "a 'persistent pattern of disloyalty' is required before an employer can recover compensation paid to an employee[.]" *Id.* (citing *Bon Temps Agency v. Greenfield*, 212 AD2d 427, 428 (1st Dept 1995); *see also Schwartz v. Leonard,* 138 AD2d 692, 693 (2d Dept 1988) (defendant planning to obtain new office space in the month preceding his departure did not constitute disloyalty).

      Here, Plaintiff has not asserted any facts demonstrating that Defendants worked less on behalf of Plaintiff prior to the termination of their employment, and Plaintiff only speculates that misappropriation has (or will) occur.  *See infra* II.C.  In addition, Plaintiff has asserted no allegations of a "pattern of disloyalty," let alone a "persistent pattern."  It is also worth noting that, to the extent Plaintiff intends to assert the faithless servant doctrine with regard to activities undertaken during Wascak and Rolle's garden leave periods, Defendants did not receive payment during that time.  There would be no compensation to recover; therefore, Plaintiff fails to plausibly allege injury.

    C.  Plaintiff's Claim for Misappropriation of Trade Secrets and Confidential Information

10

Plaintiff asserts a claim under the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq*. that Defendants misappropriated trade secrets "by forming HTD Talent, a direct competitor, and which, on information and belief, Mr. Wascak and Mr. Rolle will be running using the confidential, proprietary and trade secret information they obtained while employed at the Company."  Compl. ¶ 109.  Plaintiff lists the following as confidential information and trade secrets: "the curriculum; the induction deck and other confidential sales material; the Company's pipeline of prospective clients; key relationships with the Company's major clients and potential clients; pricing strategy; and structure and negotiation of MSAs."  *Id.* ¶ 105.

To prevail on a claim for misappropriation of trade secrets, a plaintiff must demonstrate "'(1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means.'" *iSentium, LLC v. Bloomberg Fin. L.P.*, 2018 WL 6025864, at *3 (S.D.N.Y. Nov. 16, 2018) (quoting *Schroeder v. Pinterest Inc.*, 133 A.D.3d 12, 27 (1st Dep't 2015).

Plaintiff has not plausibly alleged sufficient facts demonstrating Defendants have misappropriated information that is confidential, proprietary, or subject to protection as trade secrets.  Taking as true the facts asserted in the Complaint, to date Defendants have merely started a business that operates in the same field and employs a business model not unique to Plaintiff.  Plaintiff will obtain new clients via public RFPs; those clients are large and well-known financial institutions and companies around the world; and their identities and key contacts are available in the public domain and thus not protectable as trade secrets.  *See Reed, Roberts Assocs., Inc. v. Strauman*, 40 N.Y.2d 303, 308 (1976) (finding no "trade secret protection" where former employer's past or prospective customer names can be readily ascertained from sources outside its business); *Briskin v. All Seasons Servs.*, 206 A.D.2d 906,

11

907 (App. Div. 4th Dep't 1994) (refusing to enforce a restrictive covenant where the identify of

potential customers could be obtained from the yellow pages of the telephone book even where

the employer's price structure varied with the preferences and needs of individual customers).

Although Plaintiff alleges that Defendants have intimate knowledge of and helped develop sales

strategies, Plaintiff has not shown that this information is unique to Plaintiff or different in kind

to information that other staffing or recruitment professionals might possess.  *See Reed, Roberts

Assocs., Inc.*, 40 N.Y.2d at 309 (finding "knowledge of intricacies of . . . business operation" not

trade secrets); *see Sales Strategies Grp., Inc. v. Fenton*, 838 N.Y.S.2d 856, 858 (Sup. Ct. 2007)

(holding that "once they have been used, sales pitches are not treated as trade secrets").  In short,

the allegations of misappropriation arise to no more than speculation. *See Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief

above the speculative level[.]").

    D.  Plaintiff's Claim for Injunctive and Declaratory Relief

        A plaintiff seeking injunctive relief must show "(1) that it has suffered an

irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate

to compensate for that injury; (3) that considering the balance of hardships between the plaintiff

and defendant, a remedy in equity is warranted; and (4) that the public interest would not be

disserved by a permanent injunction."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391,

(2006).  Plaintiff's claims for injunctive relief are based upon Defendants' breach and the

resultant injury.  Compl. ¶ 85.  Because I have found that such breach has not been plausibly

alleged, Plaintiff cannot demonstrate that it has suffered an irreparable injury.  Accordingly,

Plaintiff's claims for injunctive relief are dismissed.

Plaintiff additionally seeks a declaratory judgment declaring that: "(i) Defendants are required to fully and completely comply with Wascak and Rolle Agreements, including specifically the Restrictive Covenants contained in Section C; and (ii) Mr. Wascak is required to fully and completely comply with the RSU Grand Awards, including specifically the Restrictive Covenants contained therein."

The Declaratory Judgment Act provides that federal courts "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "It is within the broad discretion of the trial court whether to exercise declaratory jurisdiction. However, courts have found declaratory judgment to be inappropriate where a party has already invoked its right to a coercive remedy." *Deutsche Alt-A Sec. Mortg. Loan Tr., Series 2006-OA1 v. DB Structured Prod., Inc.*, 958 F. Supp. 2d 488, 507 (S.D.N.Y. 2013) (internal citations omitted). Here, because Plaintiff has sought coercive relief arising out of the same conduct as its claim for declaratory relief, Plaintiff's claim for declaratory judgment is dismissed.

## CONCLUSION

For the reasons discussed, the motion to dismiss for failure to state a claim is granted.  The Clerk of Court shall terminate the motion (ECF No. 17).  I grant Plaintiff leave to replead its papers by November 14, 2022.  Failing such motion, the Clerk shall grant judgment to Defendants with costs.

SO ORDERED.

Dated:          October 27, 2022                    /s/ Alvin K. Hellerstein
                New York, New York                  ALVIN K. HELLERSTEIN
                                                    United States District Judge