# EXHIBIT B

Christopher Wascak    Participant ID: CWASCAK    John Wiley &Sons, Inc. (JWA)

| Plan: | KESP2014 | Grant ID: | KM1421303 | Grant Date: | Sep/21/2020 |
|---|---|---|---|---|---|
| Grant Type: | RSU | Grant Price: | $0.00 | Quantity: | 600 |
| Grant Status: | Accepted | Action Date: | Oct/06/2020 | | |

R1421, 20C, Accepted, Oct-06-2020 08:49:AM EDT

# RESTRICTED SHARE UNIT GRANT AGREEMENT
# PURSUANT TO THE 2014 KEY EMPLOYEE STOCK PLAN

TO:  Christopher Wascak

To recognize and reward your contribution toward the long-term success of John Wiley &Sons, Inc. (*Company*), you have been granted this restricted share unit award (*Award*), pursuant to the Company's 2014 Key Employee Stock Plan (*Plan*). The Award represents the right to receive shares of the Company's Class A Common Stock (*Shares*) that are subject to the vesting conditions set forth in this agreement (*Agreement*).

The details of your Award are summarized below:

**Grant ID:**      KM1421303

**Grant Date:**    Sep/21/2020

**Number of Restricted Share Units:   600**

**Vesting Schedule:**

| Quantity | Vest Date |
|---|---|
| 150 | August 16, 2021 |
| 150 | August 16, 2022 |
| 150 | August 16, 2023 |
| 150 | August 16, 2024 |

The terms of the Award are as set forth in this Agreement and in the Plan, a copy of which is available on the UBS One Source Website. The Plan is incorporated into this Agreement by reference, which means that this Agreement is limited by and subject to the express terms and provisions of the Plan. In the event of a conflict between the terms of this Agreement and the terms of the Plan, the terms of the Plan shall govern.

1. **Issuance of Shares and Shareholder Rights.** You shall not have any right in, to, or with respect to any of the Shares (including any voting rights or rights with respect to dividends paid on the Common Stock) issuable under the Award until the Award is settled by the issuance of such Shares to you.  The restricted share units shall vest in accordance with the above Vesting Schedule.  One Share shall be issuable for each restricted share unit that vests on such vesting date subject to the terms and provisions of the Plan and this Agreement.  On or promptly following those dates, the Company shall transfer such Shares to you upon satisfaction of any required tax withholding obligations.  Following settlement of the Award, and upon satisfaction of all tax withholding obligations, you become a shareholder of record, and shall receive voting rights and rights with respect to dividends paid on the Shares awarded.

2. **Termination of Employment.**

    a. <u>Retirement, Resignation or Termination with or without Cause</u>.  Except as otherwise provided in this Section, or in a written agreement approved by the Executive Compensation and Development Committee (*Committee*), if you retire, or if you resign, or if your employment is terminated by the Company, with or without Cause before the Award vests, you shall forfeit the right to receive an Award.

    b. <u>Death or Disability</u>.  In the event of your death or Disability while in employment prior to

the vesting of the Shares, all unvested Shares shall immediately become fully vested and payable to you (or, in the event of your death, your estate).  "Disability" for this purpose shall be determined by the Committee pursuant to Section 22(e) (3) of the Code.

- c. <u>Change in Control.</u>  In the event of a Change in Control, as that term is defined in the Plan, in cases where:

    i.   the acquiring company is not publicly traded, or

    ii.  where the acquiring company is publicly traded and the company does not assume or replace the outstanding equity, or

    iii. your employment is terminated due to a without Cause termination within twenty-four (24) months following a Change in Control, where the awards were assumed or replaced,

    all unvested Shares granted pursuant to this Agreement shall immediately become fully vested and settled through the issuance of Shares promptly following such event.

    Cause is defined as:  (A) your refusal or willful and continued failure to substantially perform your material duties to the best of your ability (for reasons other than death or disability), in any such case after written notice thereof and your failure to remedy such refusal or failure; (B) your gross negligence in the performance of your material duties; (C) any act of fraud, misappropriation, material dishonesty, embezzlement, willful misconduct or similar conduct; (D) your conviction of or plea of guilty or nolo contendere to a felony or any crime involving moral turpitude; or (E) your material and willful violation of any of the Company's reasonable rules, regulations, policies, directions and restrictions.

3. **Restrictions**.  Except as otherwise provided for in this Agreement or in the Plan, the restricted share units or rights granted hereunder may not be sold, pledged or otherwise transferred.

4. **Non-Solicitation**

    a. During your employment and for a period of one year thereafter, you agree that you shall not directly, or indirectly through another entity, (i) induce or attempt to induce any employee of the Company or any affiliate to leave the employ of the Company or such affiliate, or in any way interfere with the relationship between the Company or any affiliate and any employee thereof, (ii) hire any person who was an employee of the Company or any affiliate at any time during the last twelve (12) months, or (iii) induce or attempt to induce any customer, supplier, licensee, licensor, franchisee or other business relation of the Company or any affiliate to cease doing business with the Company or such affiliate, or in any way interfere with the relationship between any such customer, supplier, licensee, licensor, franchisee or business relation and the Company or any affiliate (including, without limitation, making any negative statements or communications about the Company or its affiliates).

    b. This non-solicitation restriction shall apply regardless of the reason that your employment with the Company ends, including whether it ends voluntarily or involuntarily.

    c. <u>Forfeiture of Awards</u>.  By accepting the Award, you expressly agree and acknowledge that the forfeiture provisions will apply if the Committee determines, in its sole judgment, that you have engaged in an act that violates paragraph (a).  In such determination, your outstanding Restricted Share Units will immediately be rescinded, and you will forfeit any rights you have with respect to these Restricted Share Units as of the date of the Committee's determination.  In addition, you hereby agree and promise immediately to deliver to the Company, an amount equal to the value of any Restricted Share Units you received under

this Award during the period beginning twelve (12) months prior to your Termination of Employment and ending on the date of the Committee's determination.

5. **Taxes.**
   a. <u>Generally.</u>  You are ultimately liable and responsible for all taxes owed in connection with the Award and dividend payments arising from this Award, regardless of any action the Company or UBS takes with respect to any tax withholding obligations that arise in connection with the Award.  Neither the Company nor UBS makes any representation or undertaking regarding the treatment of any tax withholding in connection with the grant or vesting of the Award or the subsequent sale of Shares issuable pursuant to the Award.  The Company does not commit and is under no obligation to structure the Award to reduce or eliminate your tax liability.  The Company may refuse to issue any Shares to you until you satisfy the tax withholding obligation.  For purposes hereof, "UBS" includes the Plan third party administrator and any successor thereto.

   b. <u>Payment of Withholding Taxes.</u>  Prior to each vesting date in connection with the Award that results in any domestic or foreign tax withholding obligation, whether national, federal, state or local, including any social tax obligation, you must arrange for the satisfaction of the minimum amount of such tax withholding obligation, as required, in a manner acceptable to the Company.  You are responsible for obtaining professional advice as appropriate.  Prior to the vesting dates in connection with the Award, you shall be notified by UBS of any tax withholding obligation.  You have the option of satisfying your tax withholding obligation in one of two ways:

   i. *By Surrendering Shares.*  Unless you choose to satisfy the tax withholding obligation by some other means in accordance with clause (ii) below, your acceptance of this Award constitutes your instruction and authorization to the Company and UBS to withhold a whole number of Shares from those Shares issuable to you as the Company and UBS determine to be appropriate to satisfy your tax withholding obligation on each vesting date.

   ii. *By Check (U.S. participants only), Wire Transfer or Other Means.*  You may elect to satisfy your tax withholding obligation by remitting to UBS as instructed an amount that the Company and UBS determine is sufficient to satisfy the minimum tax withholding obligation.

6. **Plan Information.**  You agree to receive stockholder information, including copies of any annual report, proxy statement and other periodic reports, from the Investor Relations section of *http://www.wiley.com*.  You acknowledge that copies of the Plan and stockholder information are available upon written or telephonic request to the Corporate Secretary.

7. **Limitation on Rights; No Right to Future Grants; Extraordinary Item.** By entering into this Agreement and accepting the Award, you acknowledge that: (a) the Plan is discretionary and may be modified, suspended or terminated by the Company at any time as provided in the Plan; (b) the grant of the Award is a one-time benefit and does not create any contractual or other right to receive future grants of awards or benefits in lieu of awards; (c) all determinations with respect to any such future grants, including, but not limited to, the times when awards shall be granted, the number of shares subject to each award, the award price, if any, and the time or times when each award shall be settled, shall be at the sole discretion of the Company; (d) your participation in the Plan is voluntary; (e) the value of this Award on an ongoing basis is an extraordinary item which is outside the scope of your terms of

employment or your employment contract, if any; (f) the Award is not part of normal or expected compensation for any purpose, including without limitation for calculating any benefits, severance, resignation, termination, redundancy, end of service payments, bonuses, long-service awards, pension or retirement benefits or similar payments; (g) the future value of the Common Stock subject to the Award is unknown and cannot be predicted with certainty, (h) neither the Plan, the Award nor the issuance of the Shares confers upon you any right to continue in the employ of (or any other relationship with) the Company or any Subsidiary, nor do they limit in any respect the right of the Company or any Subsidiary to terminate your employment or other relationship with the Company or any Subsidiary, as the case may be, at any time.

8. **Acceptance and Acknowledgment.**  I accept and agree to the terms of the restricted share unit Award described in this Agreement and in the Plan, acknowledge receipt of a copy of this Agreement and the Plan, and acknowledge that I have read them carefully and that I fully understand their contents.

**Christopher Wascak**     **Participant ID: 26463**     **John Wiley &Sons, Inc. (JWA)**

| Plan: | KESP2014 | Grant ID: | KM1422312 | Grant Date: | Dec/09/2021 |
|---|---|---|---|---|---|
| Grant Type: | RSU | Grant Price: | $0.00 | Quantity: | 185 |
| Grant Status: | Accepted | Action Date: | Jan/26/2022 | | |

R1422, 21B, Accepted, Jan-26-2022 15:33:PM EST



# RESTRICTED SHARE UNIT GRANT AGREEMENT
## PURSUANT TO THE 2014 KEY EMPLOYEE STOCK PLAN

TO:  Christopher Wascak

To recognize and reward your contribution toward the long-term success of John Wiley &Sons, Inc. (*Company*), you have been granted this restricted share unit award (*Award*), pursuant to the Company's 2014 Key Employee Stock Plan (*Plan*). The Award represents the right to receive shares of the Company's Class A Common Stock (*Shares)* that are subject to the vesting conditions set forth in this agreement (*Agreement*).

The details of your Award are summarized below:

**Grant ID:**        KM1422312
**Grant Date:**   June 24, 2021

**Number of Restricted Share Units:**  185
**Vesting Schedule (except as otherwise provided in Section 2):**

| Quantity | Vest Date |
|---|---|
| 46 | Apr/30/2022 |
| 46 | Apr/30/2023 |
| 46 | Apr/30/2024 |
| 47 | Apr/30/2025 |

The terms of the Award are as set forth in this Agreement and in the Plan, a copy of which is available on the UBS One Source Website. The Plan is incorporated into this Agreement by reference, which means that this Agreement is limited by and subject to the express terms and provisions of the Plan. In the event of a conflict between the terms of this Agreement and the terms of the Plan, the terms of the Plan shall govern.

1. **Issuance of Shares and Shareholder Rights.** You shall not have any right in, to, or with respect to any of the Shares (including any voting rights or rights with respect to dividends paid on the Common Stock) issuable under the Award until the Award is settled by the issuance of such Shares to you.  The restricted share units shall vest in accordance with the above Vesting Schedule.  One Share shall be issuable for each restricted share unit that vests on such vesting date subject to the terms and provisions of the Plan and this Agreement.  On or promptly following those dates, the Company shall transfer such Shares to you upon satisfaction of any required tax withholding obligations.  Following settlement of the Award, and upon satisfaction of all tax withholding obligations, you become a shareholder of record, and shall receive voting rights and rights with respect to dividends paid on the Shares awarded.

2. **Termination of Employment.**
    a. Retirement, Resignation or Termination with or without Cause.  Except as otherwise provided in this Section, or in a written agreement approved by the Executive

    Compensation and Development Committee (*Committee*), if you retire, or if you resign, or if your employment is terminated by the Company, with or without Cause before the Award vests, you shall forfeit the right to receive an Award.

  b. <u>Death or Disability</u>.  In the event of your death or Disability while in employment prior to the vesting of the Shares, all unvested Shares shall immediately become fully vested and payable to you (or, in the event of your death, your estate).  "Disability" for this purpose shall be determined by the Committee pursuant to Section 22(e) (3) of the Code.

  c. <u>Change in Control.</u>  In the event of a Change in Control, as that term is defined in the Plan, in cases where:

      i. the acquiring company is not publicly traded, or

      ii. where the acquiring company is publicly traded and the company does not assume or replace the outstanding equity, or

      iii. your employment is terminated due to a without Cause termination within twenty-four (24) months following a Change in Control, where the awards were assumed or replaced,

  all unvested Shares granted pursuant to this Agreement shall immediately become fully vested and settled through the issuance of Shares promptly following such event.

  Cause is defined as:  (A) your refusal or willful and continued failure to substantially perform your material duties to the best of your ability (for reasons other than death or disability), in any such case after written notice thereof and your failure to remedy such refusal or failure; (B) your gross negligence in the performance of your material duties; (C) any act of fraud, misappropriation, material dishonesty, embezzlement, willful misconduct or similar conduct; (D) your conviction of or plea of guilty or nolo contendere to a felony or any crime involving moral turpitude; or (E) your material and willful violation of any of the Company's reasonable rules, regulations, policies, directions and restrictions.

  Retirement is defined as a participant's retirement after attaining a minimum of age 55 with 10 or more years of continuous employment with the Company, or any Subsidiary or Affiliate.

3. **Restrictions**.  Except as otherwise provided for in this Agreement or in the Plan, the restricted share units or rights granted hereunder may not be sold, pledged or otherwise transferred.

4. **Non-Solicitation**

  a. During your employment with the Company, you have and will become familiar with the Company's trade secrets, information related to the operations, products and services of the Company, and with other Confidential Information concerning the Company, its subsidiaries, affiliates, and companies acquired by the Company. Therefore, during your employment and for a period of one year thereafter, you agree that you shall not directly, or indirectly through another entity, (i) induce or attempt to induce any employee of the Company or any affiliate to leave the employ of the Company or such affiliate, or in any way interfere with the relationship between the Company or any affiliate and any employee thereof, (ii) solicit, induce, recruit or hire any person who was an employee of the Company or any affiliate at any time during your employment with the Company, or (iii) induce or attempt to induce any customer, supplier, licensee, licensor, franchisee or other business relation of the Company or any affiliate to cease doing business with the Company or such affiliate, or in any way

    interfere with the relationship between any such customer, supplier, licensee, licensor, franchisee or business relation and the Company or any affiliate (including, without limitation, making any negative statements or communications about the Company or its affiliates).

    b. This non-solicitation restriction shall apply regardless of the reason that your employment with the Company ends, including whether it ends voluntarily or involuntarily.

    c. <u>Forfeiture of Awards</u>.  By accepting the Award, you expressly agree and acknowledge that the forfeiture provisions will apply if the Committee determines, in its sole judgment, that you have engaged in an act that violates paragraph (a).  In such determination, your outstanding Restricted Share Units will immediately be rescinded, and you will forfeit any rights you have with respect to these Restricted Share Units as of the date of the Committee's determination.  In addition, you hereby agree and promise immediately to deliver to the Company, an amount equal to the value of any Restricted Share Units you received under this Award during the period beginning twelve (12) months prior to your Termination of Employment and ending on the date of the Committee's determination.

5. **Taxes.**
   a. <u>Generally.</u>  You are ultimately liable and responsible for all taxes owed in connection with the Award and dividend payments arising from this Award, regardless of any action the Company or UBS takes with respect to any tax withholding obligations that arise in connection with the Award.  Neither the Company nor UBS makes any representation or undertaking regarding the treatment of any tax withholding in connection with the grant or vesting of the Award or the subsequent sale of Shares issuable pursuant to the Award.  The Company does not commit and is under no obligation to structure the Award to reduce or eliminate your tax liability.  The Company may refuse to issue any Shares to you until you satisfy the tax withholding obligation.  For purposes hereof, "UBS" includes the Plan third party administrator and any successor thereto.

   b. <u>Payment of Withholding Taxes.</u>  Prior to each vesting date in connection with the Award that results in any domestic or foreign tax withholding obligation, whether national, federal, state or local, including any social tax obligation, you must arrange for the satisfaction of the minimum amount of such tax withholding obligation, as required, in a manner acceptable to the Company.  You are responsible for obtaining professional advice as appropriate.  Prior to the vesting dates in connection with the Award, you shall be notified by UBS of any  minimum tax withholding obligation.  You have the option of satisfying your  minimum tax withholding obligation in one of two ways:

       i. *By Surrendering Shares*.  Unless you choose to satisfy the minimum tax withholding obligation by some other means in accordance with clause (ii) below, your acceptance of this Award constitutes your instruction and authorization to the Company and UBS to withhold a whole number of Shares from those Shares issuable to you as the Company and UBS determine to be appropriate to satisfy your minimum tax withholding obligation on each vesting date.

       ii. *By Check (U.S. participants only), Wire Transfer or Other Means*.  You may elect to satisfy your minimum tax withholding obligation by remitting to UBS as instructed an amount that the Company and UBS determine is sufficient to satisfy the minimum tax withholding obligation.

6. **Plan Information.**  You agree to receive stockholder information, including copies of any annual report, proxy statement and other periodic reports, from the Investor Relations section

of *http://www.wiley.com*.  You acknowledge that copies of the Plan and stockholder information are available upon written or telephonic request to the Corporate Secretary.

7. **Limitation on Rights; No Right to Future Grants; Extraordinary Item.** By entering into this Agreement and accepting the Award, you acknowledge that: (a) the Plan is discretionary and may be modified, suspended or terminated by the Company at any time as provided in the Plan; (b) the grant of the Award is a one-time benefit and does not create any contractual or other right to receive future grants of awards or benefits in lieu of awards; (c) all determinations with respect to any such future grants, including, but not limited to, the times when awards shall be granted, the number of shares subject to each award, the award price, if any, and the time or times when each award shall be settled, shall be at the sole discretion of the Company; (d) your participation in the Plan is voluntary; (e) the value of this Award on an ongoing basis is an extraordinary item which is outside the scope of your terms of employment or your employment contract, if any; (f) the Award is not part of normal or expected compensation for any purpose, including without limitation for calculating any benefits, severance, resignation, termination, redundancy, end of service payments, bonuses, long-service awards, pension or retirement benefits or similar payments; (g) the future value of the Common Stock subject to the Award is unknown and cannot be predicted with certainty, (h) neither the Plan, the Award nor the issuance of the Shares confers upon you any right to continue in the employ of (or any other relationship with) the Company or any Subsidiary, nor do they limit in any respect the right of the Company or any Subsidiary to terminate your employment or other relationship with the Company or any Subsidiary, as the case may be, at any time.

8. **Acceptance and Acknowledgment.**  I accept and agree to the terms of the restricted share unit Award described in this Agreement and in the Plan, acknowledge receipt of a copy of this Agreement and the Plan, and acknowledge that I have read them carefully and that I fully understand their contents.

**Christopher Wascak**     **Participant ID: 26463**     **John Wiley &Sons, Inc. (JWA)**

| | | | | | |
|---|---|---|---|---|---|
| **Plan:** | KESP2014 | **Grant ID:** | KM1422312 | **Grant Date:** | Dec/09/2021 |
| **Grant Type:** | RSU | **Grant Price:** | $0.00 | **Quantity:** | 185 |
| **Grant Status:** | Accepted | **Action Date:** | Jan/26/2022 | | |

R1422, 21B, Accepted, Jan-26-2022 15:33:PM EST



# RESTRICTED SHARE UNIT GRANT AGREEMENT
## PURSUANT TO THE 2014 KEY EMPLOYEE STOCK PLAN

TO:  Christopher Wascak

To recognize and reward your contribution toward the long-term success of John Wiley &Sons, Inc. (*Company*), you have been granted this restricted share unit award (*Award*), pursuant to the Company's 2014 Key Employee Stock Plan (*Plan*). The Award represents the right to receive shares of the Company's Class A Common Stock (*Shares)* that are subject to the vesting conditions set forth in this agreement (*Agreement*).

The details of your Award are summarized below:

**Grant ID:**       KM1422312

**Grant Date:**     June 24, 2021

**Number of Restricted Share Units:**  185

**Vesting Schedule (except as otherwise provided in Section 2):**

| Quantity | Vest Date |
|---|---|
| 46 | Apr/30/2022 |
| 46 | Apr/30/2023 |
| 46 | Apr/30/2024 |
| 47 | Apr/30/2025 |

 The terms of the Award are as set forth in this Agreement and in the Plan, a copy of which is available on the UBS One Source Website. The Plan is incorporated into this Agreement by reference, which means that this Agreement is limited by and subject to the express terms and provisions of the Plan. In the event of a conflict between the terms of this Agreement and the terms of the Plan, the terms of the Plan shall govern.

1. **Issuance of Shares and Shareholder Rights.** You shall not have any right in, to, or with respect to any of the Shares (including any voting rights or rights with respect to dividends paid on the Common Stock) issuable under the Award until the Award is settled by the issuance of such Shares to you.  The restricted share units shall vest in accordance with the above Vesting Schedule.  One Share shall be issuable for each restricted share unit that vests on such vesting date subject to the terms and provisions of the Plan and this Agreement.  On or promptly following those dates, the Company shall transfer such Shares to you upon satisfaction of any required tax withholding obligations.  Following settlement of the Award, and upon satisfaction of all tax withholding obligations, you become a shareholder of record, and shall receive voting rights and rights with respect to dividends paid on the Shares awarded.

2. **Termination of Employment.**
    a. Retirement, Resignation or Termination with or without Cause.  Except as otherwise provided in this Section, or in a written agreement approved by the Executive

    Compensation and Development Committee (*Committee*), if you retire, or if you resign, or if your employment is terminated by the Company, with or without Cause before the Award vests, you shall forfeit the right to receive an Award.

  b. <u>Death or Disability</u>.  In the event of your death or Disability while in employment prior to the vesting of the Shares, all unvested Shares shall immediately become fully vested and payable to you (or, in the event of your death, your estate).  "Disability" for this purpose shall be determined by the Committee pursuant to Section 22(e) (3) of the Code.

  c. <u>Change in Control.</u>  In the event of a Change in Control, as that term is defined in the Plan, in cases where:

      i. the acquiring company is not publicly traded, or

      ii. where the acquiring company is publicly traded and the company does not assume or replace the outstanding equity, or

      iii. your employment is terminated due to a without Cause termination within twenty-four (24) months following a Change in Control, where the awards were assumed or replaced,

  all unvested Shares granted pursuant to this Agreement shall immediately become fully vested and settled through the issuance of Shares promptly following such event.

  Cause is defined as:  (A) your refusal or willful and continued failure to substantially perform your material duties to the best of your ability (for reasons other than death or disability), in any such case after written notice thereof and your failure to remedy such refusal or failure; (B) your gross negligence in the performance of your material duties; (C) any act of fraud, misappropriation, material dishonesty, embezzlement, willful misconduct or similar conduct; (D) your conviction of or plea of guilty or nolo contendere to a felony or any crime involving moral turpitude; or (E) your material and willful violation of any of the Company's reasonable rules, regulations, policies, directions and restrictions.

  Retirement is defined as a participant's retirement after attaining a minimum of age 55 with 10 or more years of continuous employment with the Company, or any Subsidiary or Affiliate.

3. **Restrictions**.  Except as otherwise provided for in this Agreement or in the Plan, the restricted share units or rights granted hereunder may not be sold, pledged or otherwise transferred.

4. **Non-Solicitation**

  a. During your employment with the Company, you have and will become familiar with the Company's trade secrets, information related to the operations, products and services of the Company, and with other Confidential Information concerning the Company, its subsidiaries, affiliates, and companies acquired by the Company. Therefore, during your employment and for a period of one year thereafter, you agree that you shall not directly, or indirectly through another entity, (i) induce or attempt to induce any employee of the Company or any affiliate to leave the employ of the Company or such affiliate, or in any way interfere with the relationship between the Company or any affiliate and any employee thereof, (ii) solicit, induce, recruit or hire any person who was an employee of the Company or any affiliate at any time during your employment with the Company, or (iii) induce or attempt to induce any customer, supplier, licensee, licensor, franchisee or other business relation of the Company or any affiliate to cease doing business with the Company or such affiliate, or in any way

      interfere with the relationship between any such customer, supplier, licensee, licensor, franchisee or business relation and the Company or any affiliate (including, without limitation, making any negative statements or communications about the Company or its affiliates).

    b. This non-solicitation restriction shall apply regardless of the reason that your employment with the Company ends, including whether it ends voluntarily or involuntarily.

    c. <u>Forfeiture of Awards</u>.  By accepting the Award, you expressly agree and acknowledge that the forfeiture provisions will apply if the Committee determines, in its sole judgment, that you have engaged in an act that violates paragraph (a).  In such determination, your outstanding Restricted Share Units will immediately be rescinded, and you will forfeit any rights you have with respect to these Restricted Share Units as of the date of the Committee's determination.  In addition, you hereby agree and promise immediately to deliver to the Company, an amount equal to the value of any Restricted Share Units you received under this Award during the period beginning twelve (12) months prior to your Termination of Employment and ending on the date of the Committee's determination.

5. **Taxes.**
   a. <u>Generally.</u>  You are ultimately liable and responsible for all taxes owed in connection with the Award and dividend payments arising from this Award, regardless of any action the Company or UBS takes with respect to any tax withholding obligations that arise in connection with the Award.  Neither the Company nor UBS makes any representation or undertaking regarding the treatment of any tax withholding in connection with the grant or vesting of the Award or the subsequent sale of Shares issuable pursuant to the Award.  The Company does not commit and is under no obligation to structure the Award to reduce or eliminate your tax liability.  The Company may refuse to issue any Shares to you until you satisfy the tax withholding obligation.  For purposes hereof, "UBS" includes the Plan third party administrator and any successor thereto.

   b. <u>Payment of Withholding Taxes.</u>  Prior to each vesting date in connection with the Award that results in any domestic or foreign tax withholding obligation, whether national, federal, state or local, including any social tax obligation, you must arrange for the satisfaction of the minimum amount of such tax withholding obligation, as required, in a manner acceptable to the Company.  You are responsible for obtaining professional advice as appropriate.  Prior to the vesting dates in connection with the Award, you shall be notified by UBS of any  minimum tax withholding obligation.  You have the option of satisfying your  minimum tax withholding obligation in one of two ways:

       i. *By Surrendering Shares*.  Unless you choose to satisfy the minimum tax withholding obligation by some other means in accordance with clause (ii) below, your acceptance of this Award constitutes your instruction and authorization to the Company and UBS to withhold a whole number of Shares from those Shares issuable to you as the Company and UBS determine to be appropriate to satisfy your minimum tax withholding obligation on each vesting date.

       ii. *By Check (U.S. participants only), Wire Transfer or Other Means*.  You may elect to satisfy your minimum tax withholding obligation by remitting to UBS as instructed an amount that the Company and UBS determine is sufficient to satisfy the minimum tax withholding obligation.

6. **Plan Information.**  You agree to receive stockholder information, including copies of any annual report, proxy statement and other periodic reports, from the Investor Relations section

of *http://www.wiley.com*.  You acknowledge that copies of the Plan and stockholder information are available upon written or telephonic request to the Corporate Secretary.

7. **Limitation on Rights; No Right to Future Grants; Extraordinary Item.** By entering into this Agreement and accepting the Award, you acknowledge that: (a) the Plan is discretionary and may be modified, suspended or terminated by the Company at any time as provided in the Plan; (b) the grant of the Award is a one-time benefit and does not create any contractual or other right to receive future grants of awards or benefits in lieu of awards; (c) all determinations with respect to any such future grants, including, but not limited to, the times when awards shall be granted, the number of shares subject to each award, the award price, if any, and the time or times when each award shall be settled, shall be at the sole discretion of the Company; (d) your participation in the Plan is voluntary; (e) the value of this Award on an ongoing basis is an extraordinary item which is outside the scope of your terms of employment or your employment contract, if any; (f) the Award is not part of normal or expected compensation for any purpose, including without limitation for calculating any benefits, severance, resignation, termination, redundancy, end of service payments, bonuses, long-service awards, pension or retirement benefits or similar payments; (g) the future value of the Common Stock subject to the Award is unknown and cannot be predicted with certainty, (h) neither the Plan, the Award nor the issuance of the Shares confers upon you any right to continue in the employ of (or any other relationship with) the Company or any Subsidiary, nor do they limit in any respect the right of the Company or any Subsidiary to terminate your employment or other relationship with the Company or any Subsidiary, as the case may be, at any time.

8. **Acceptance and Acknowledgment.**  I accept and agree to the terms of the restricted share unit Award described in this Agreement and in the Plan, acknowledge receipt of a copy of this Agreement and the Plan, and acknowledge that I have read them carefully and that I fully understand their contents.