# EXHIBIT L

**OTTINGER**
**EMPLOYMENT LAWYERS**

Robert W. Ottinger
Direct: (917) 566-2037
robert@ottingerlaw.com

79 Madison Avenue
New York, NY 10016
(347) 492-1904

535 Mission Street
14th Floor
San Francisco, CA 94105
(415) 262-0096

OTTINGERLAW.COM

August 11, 2022

**VIA EMAIL ONLY**

Kristy Grazioso
VP, Global Employment Counsel
John Wiley & Sons
111 River Street
Hoboken, NJ 07030
kgrazioso@wiley.com

Re:   *Robert Rolle and Chris Wascak Employment Dispute with Wiley Edge*

Dear Ms. Grazioso:

Our employment law firm has been retained by Robert Rolle and Chris Wascak. Mr. Rolle was employed by Wiley Edge fka Mthree Corporate Consulting Limited ("Wiley" or the "Company") as the Director – Inside Sales and Mr. Wascak was employed by Wiley as the Senior Director – Head of Global Business Development. This letter is in response to your cease and desist demand sent to both parties demanding a response by August 11, 2022. Wiley's cease and desist demand is unwarranted and inconsistent with New York law and public policy. As discussed in detail below, Wiley's allegation that Mr. Rolle and Mr. Wascak are in breach of their contractual obligations contained in the "Confidentiality, Restrictive Covenant and Inventions Agreement" is inaccurate because the relevant restrictive covenants are unenforceable under New York law. To the extent Wiley alleges Mr. Wascak is further obligated by the "Restricted Share Unit Grant Agreement," please provide a copy of said fully executed agreement.

**NON-COMPETE PROVISIONS**

As a general rule, "New York courts adhere to a strict approach to enforcement of restrictive covenants because their enforcement conflicts with the general public policy favoring robust and uninhibited competition, and powerful considerations of public policy which militate against sanctioning the loss of a man's livelihood." *Kelly v. Evolution Markets, Inc.*, 626 F.Supp.2d 364, 371 (S.D.N.Y. 2009) As such, a restrictive covenant will only be subject to enforcement to the extent necessary to prevent the disclosure or use of trade secrets or confidential customer information; or where an employee's services are unique or extraordinary, and the covenant is reasonable. *Reed, Roberts Assocs., Inc. v. Strauman,* 40 N.Y.2d 303, 308 (1976) In determining whether a restraint is reasonable, the court looks to a three-prong test: (1) restriction is no greater than is required for the protection of the legitimate interest of the employer; (2) the restriction does not impose undue hardship on the employee; and (3) the restriction is not injurious to the public. *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 388-89 (1999). A violation of any prong renders the covenant invalid. *Id.*

**No Legitimate Business Interest**

New York courts interpret the first prong to limit an employer's legitimate interests to the "protection against misappropriation of the employer's trade secrets or of confidential customer lists, or

8/11/22
Page 2 of 5

protection from competition by a former employee whose services are unique or extraordinary." *Reed, Robert Assocs.,* 40 N.Y.2d 308; *BDO Seidman,* 93 N.Y.2d 389 Restrictive covenants will be enforceable to the extent necessary to prevent the disclosure or use of trade secrets or confidential information. *Id.* at 593 "New York courts consider several factors in determining whether information constitutes a trade secret, including (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *See North Atlantic Instruments, Inc. v. Haber,* 188 F.3d 38, 44 (2d Cir. 1999); *Estee Lauder Companies, Inc. v. Batra* 430 F.Supp.2d 158, 175 (S.D.N.Y 2006). Price lists, product samples, and marketing plans are all not protected as trade secrets as a matter of law. *Id.* Further, an employee's knowledge of the intricacies of their employer's business operation does not enjoy trade secret protection. *Reed, Roberts Assoc., Inc.,* 40 N.Y.2d 309 (1976).

Wiley describes itself as "the emerging talent and reskill training partner for public and private organizations across the globe." As the Director – Inside Sales, Mr. Rolle was responsible for reaching out to potential customers to schedule meetings with companies interested in Wiley's services. As soon as a company shows interest in Wiley's services, Mr. Rolle's involvement with the company ceases and the company is then passed on to Mr. Wascak's department as Senior Director – Global Business Development. Mr. Wascak's responsibilities include securing and finalizing contracts with interested companies. Notably, the companies Mr. Rolle and Mr. Wascak are in contact with are potential customers known to the public and known to others in the industry because they are generally the 1,500 largest global companies. Further, once a company becomes a client of Wiley's, the fact that the company is now Wiley's client is public information and posted on the internet on public domains easily accessible by the public, including LinkedIn and Wiley's website.

First, whether a customer list constitutes a trade secret depends on whether "the customers are readily ascertainable outside the employer's business as prospective users or consumers of the employer's services or products." *Leo Silfen, Inc. v. Cream,* 29 N.Y.2d 387, 392 (Ct.App.1972) If the customers are readily ascertainable outside the employer's business, the employer's customer list is not entitled to trade secret protection. *Id.* As discussed above, Wiley's prospective and actual clients are readily ascertainable by the public and therefore, do not constitute a trade secret so as to establish a legitimate business interest for Wiley. Further, while your letter contains a laundry list of alleged confidential information purported to be known to Mr. Rolle and Mr. Wascak, this is simply not correct. As discussed above, price lists, product samples, marketing plans, and an employee's knowledge of the intricacies of the employer's business operation does not enjoy trade secret protection. *Id.; Estee Lauder Companies, Inc., supra,* at 175 (S.D.N.Y 2006). Further, the training materials Wiley purports as confidential information are made up of industry standards and skills known to professionals in the IT field, and therefore are not afforded trade secret protection.

Second, courts recognize an employer's legitimate interest in protecting themselves from competition by a former employee whose services are unique or extraordinary. *BDO Seidman,* 93 N.Y.2d 389 Whether an employee's services are unique is a case-specific inquiry. *USI Ins. Servs. LLC v. Miner,* 801 F. Sup.2d 175, 189 (S.D.N.Y. 2011) The core of the inquiry is whether the services rendered by a given employee are "not simply of value to the employer, but may also truly be said to be special, unique, or extraordinary." *Ticor Title Ins. Co. v. Cohen,* 173 F.3d 63, 70 (2d Cir. 1999) An employee being of key import or value will not automatically render one's services unique within the meaning of this limited exception. *DataType Int'l, Inc. v. Puzia,* 797 F.Supp. 274, 283 (S.D.N.Y. 1992) [stating that "it cannot be said that DataType is exposed to special harm because of the unique nature of Puzia's services. Puzia is a salesman. To be sure, he is a very good salesman; but there is nothing unique about the nature of his

services."] Similarly, although Mr. Rolle and Mr. Wascak may be excellent employees, there is nothing unique about the nature of their services. This is especially true given the fast number of companies operating in this field in the U.S. employing individuals with similar skill sets.

Lastly, even where "there is no showing that a former employee has not obtained a competitive advantage through the misappropriation of confidential customer information or that the employee possessed unique or extraordinary abilities, the employer retains a legitimate interest in preventing former employees from exploiting…the goodwill of a client or customer, which had been created and maintained at the employer's expense, to the employer's competitive detriment." *Scott, Stackrow & Co.*, 9 A.D.3d at 806 (quoting *BDO Siedman*, 93 N.Y.2d at 392) This employer interest; however, will not be construed as legitimate if the covenant "seeks to bar the employee from soliciting or providing services to clients with whom the employee never acquired a relationship through his or her employment." *Id.* Here, Wiley seeks to restrict Mr. Rolle and Mr. Wascak from "directly or indirectly, on [their] behalf or on behalf of any other person or entity, in any way, whether as an individual proprietor, partner, stockholder, officer, employee, consultant, agent, director, joint venturer, investor, or in any other capacity, own, operate, manage, control, engage in, participate in, invest in, permit [their] name to be used by, act as a consultant or advisor to, render services for (alone or in association with any person, firm, corporation, or business organization), or otherwise assist any person or entity that engages in or owns, invests in, operates, manages, controls, or is affiliated with any venture or enterprise that, in the New York Metropolitan Area or within 50 miles therefrom, offers or plans to offer competing services with those offered by the Company." As such, Wiley seeks to bar Mr. Rolle and Mr. Wascak from providing services to clients with whom they never acquired a relationship with through Wiley, including companies that are not clients of Wiley's. Thus, Wiley will be unable to establish a legitimate business interest in protecting its goodwill.

Clearly, Wiley is unable to establish a legitimate business interest that requires the enforcement of Mr. Rolle and Mr. Wascak's restrictive covenants because (1) Wiley's customer list is not entitled to trade secret protection; (2) Mr. Rolle and Mr. Wascak are not unique or extraordinary employees; and (3) Wiley seeks to restrict Mr. Rolle and Mr. Wascak from providing services to clients with whom they never acquired a relationship with through Wiley, thus Wiley's goodwill will not be construed as a legitimate interest. Wiley's restrictive covenant fails the first prong of the test. *BDO Seidman,* 93 N.Y.2d 388-89 A violation of any of the requisite prongs renders the covenant invalid; therefore, the restrictive covenant is unenforceable. *Id.*

**No Risk of Inevitable Disclosure**

When looking to the inevitable disclosure of confidential information in an employee's new role with a competitor, the court looks to whether the employee could reasonably be expected to fulfill his new job responsibilities without utilizing the trade secrets of the former employer. *EarthWeb, Inc. v. Schlack,* 71 F. Supp.2d 299, 310 (S.D.N.Y. 1999) As discussed above, Mr. Rolle and Mr. Wascak were not privy to Wiley's confidential information and as such, there is no risk they would use any such information. Further, both Mr. Rolle and Mr. Wascak have significant experience in their respective fields and have no need or use for Wiley's confidential information. *See Int'l Bus. Machines Corp. v. Visentin,* No. 11 CIV. 399 LAP, 2011 WL 672025 (S.D.N.Y. Feb 16, 2011), *aff'd,* 437 F. App'x 53 (2d Cir. 2011) [the 2nd Circuit affirmed the denial of IBM's request for preliminary injunction to enforce a non-compete agreement of 12 months against a former high-level supervisor who was now employed by a competitor finding that where an employee does not know much confidential information there is little risk of inevitable disclosure, and thus, employer cannot show irreparable harm].

Further, Wiley has no evidence that Mr. Rolle or Mr. Wascak have breached the Company's trust. Thus, the non-compete provision contained in the Agreement is unenforceable against Mr. Rolle and Mr. Wascak, and "a contrary holding would make those in charge of operations or specialists in certain aspects

of an enterprise virtual hostages of their employers. Where the knowledge does not qualify for protection as a trade secret and there has been no conspiracy or breach of trust…we see no reason to inhibit the employee's ability to realize his potential both professionally and financially by availing himself of opportunity." *Reed, Roberts Assoc., Inc., supra,* at 309

**Unreasonable in Scope**

A covenant not to compete will not be enforced if it is unreasonable in time, space, or scope, or would operate in a harsh or oppressive manner. *Reed*, *Roberts Assoc., Inc.* 40 N.Y.2d 307 Here, Mr. Rolle and Mr. Wascak's non-compete provisions restrict them from employment with a competing entity for a period of six (6) months in the "New York Metropolitan Area or within 50 miles therefrom." The restrictive covenants defines competing as any "entity that engages in or owns, invests in, operates, manages, controls, or is affiliated with any venture or enterprise that…offers or plans to offer competing services with those offered by the Company."

Notwithstanding Wiley's failure to meet the legitimate business interest prong required to enforce a restrictive covenant, the scope of the competitive businesses is stated so broadly that it renders the non-compete provisions unenforceable. *Id.* Specifically, (1) the scope is not narrowly tailored to protect the legitimate interests of the Company because it is so broad; and (2) the scope effectively restricts Mr. Rolle and Mr. Wascak from employment in almost any company or entity in their field, creating undue hardship. Additionally, the non-compete provisions fail to provide continued consideration to Mr. Rolle or Mr. Wascak during the restricted period for their continued loyalty or good will. *See Bradford v. New York Times Co.,* 501 F.2d 51, 58 (2d Cir. 1974) [noting that an additional factor to look to in evaluating reasonableness is whether the employee receives compensation and that this "factor cannot be overlooked in determining the reasonableness of the restraint presented"].

Further, the court in *Int't Business Machines Corp* found that if the primary purpose of the non-compete agreement was to protect trade secrets or confidential information, IBM could have drafted specifically tailored non-compete agreements recognizing the unique information or business areas it sought to protect, but it did not do so. No. 11 CIV. 399 LAP, 2011 WL 672025 (S.D.N.Y. Feb 16, 2011), *aff'd,* 437 F. App'x 53 (2d Cir. 2011) Similarly, the relevant non-compete provision here defines a "competing" business by simply using the word "competing" *again.* Specifically, a competing business is any entity that "offers or plans to offer **competing services** with those offered by the Company." Here, not only has Wiley failed to draft a non-compete provision with specifically tailored unique information or business areas it sought to protect, but Wiley has entirely failed to define or provide a scope for the services the Company even provides. As such, Wiley's clearly overbroad scope of services evidences an impermissible intent to force employees to remain with the Company, rather than an intent to protect a legitimate business interest. As such, the restrictive covenants are unenforceable and fail another requisite prong of the test.

**NON-SOLICITATION PROVISIONS**

**Unenforceable Where No Wrongful Conduct and Potential Customers Are Public Information**

Under New York law, non-solicitation agreements are unenforceable where the employee engaged in no wrongful conduct and the names and addresses of potential customers were readily discoverable through public sources. *Reed, Roberts Assoc., Inc., supra,* at 308-309 First, as discussed above in detail, Wiley's potential and actual customer lists are readily discoverable through public sources because they are comprised of the top 1,500 companies and posted on LinkedIn and/or Wiley's website. As such, Wiley's customer lists do not constitute trade secrets. Second, Wiley is unable to establish that Mr. Rolle or Mr. Wascak engaged in wrongful conduct by pirating the Company's customer lists. As discussed in your cease

8/11/22
Page 5 of 5

and desist demand, Wiley is clearly concerned about Mr. Rolle and Mr. Wascak's alleged knowledge of the intricacies of the Company's business operation; however, this does not constitute trade secret, as discussed above, nor does it serve as a purpose to prohibit Mr. Rolle and Mr. Wascak from utilizing their knowledge and talents in their fields. *Id.* at 309 As such, New York law is clear and the non-solicitation provisions are unenforceable.

      Given the above, Wiley's allegation that Mr. Rolle and Mr. Wascak's work with HTD Talent is in direct violation of their restrictive covenants is wholly inaccurate given that the restrictive covenants are unenforceable under New York law, as outlined in detail above. Should Wiley persist in attempting to enforce clearly unenforceable restrictive covenants, Mr. Rolle and Mr. Wascak may be forced to pursue further legal remedies available to them.

      Please also be advised that Wiley Edge should retain and not alter or destroy any and all documents, including documents in electronic and draft form, relating to this matter. We are asking that you take all necessary steps to ensure that Wiley Edge complies with its legal obligation to preserve all materials that may be in its possession, custody, or control and are relevant to the matters alleged in this letter. The legal duty to preserve such material extends both to hard copies of information and to electronic data (including but not limited to Word documents, Excel documents, emails, text messages, and chat messages), which are valuable and irreplaceable sources of discovery and/or evidence.

      Let us know if you are interested in resolving this matter. Please contact us within seven (7) days to discuss this matter. If we do not hear from you within seven (7) days from the date of this letter, we will pursue all further legal remedies available.

Sincerely,

*[signature]*

Robert Ottinger
The Ottinger Firm, P.C.