# EXHIBIT M



Jason Kislin
Tel 973.360.7906
Fax 973.295.1337
kislinj@gtlaw.com

August 16, 2022

**VIA EMAIL**

Robert W. Ottinger, Esq.
The Ottinger Firm, P.C.
79 Madison Avenue
New York, NY 10016
robert@ottingerlaw.com

Re:   Robert Rolle and Chris Wascak Employment Dispute with Wiley Edge

Dear Mr. Ottinger:

We represent Wiley Edge ("Wiley Edge" or "the Company"), formerly known as Mthree Corporate Consulting Limited.  We write in response to your letter to Ms. Grazioso dated August 11, 2022.  Based on your letter and the actions of your clients, it is clear that Mr. Rolle and Mr. Wascak are intent on violating the restrictive covenants that they voluntarily agreed to, and which are readily enforceable.  In addition, Wiley Edge has strong reason to believe that Mr. Rolle and Mr. Wascak violated other obligations to the Company, including but not limited to their duty of loyalty, by actively preparing to wrongfully compete with the Company while they were still employed by Wiley Edge.  We are writing to provide your clients with one final opportunity to confirm that they will fully comply with the restrictive covenants that they signed and acknowledged were reasonable.

The restrictive covenants are imminently reasonable in both time and scope.  New York Courts have routinely found restrictive covenants that are a year or less to be "well within the prevailing notions of reasonableness."  *Integra Optics, Inc. v. Messina*, 52 Misc.3d 1210(A), 41 N.Y.S.3d 719 (2016).  *See also Goodman v. New York Oncology Hematology, P.C.*, 101 A.D.3d 1524, 1526-27 (3d Dep't 2012) (covenant not to compete for one year found to be reasonable); *Washington Square Institute for Psychotherapy and Mental Health, Inc. v. Speciner*, 259 A.D.2d 368, 369 (1st Dep't 1999) ("The restrictive covenant in issue, which merely prohibits defendant from treating patients introduced to her by plaintiff for a period of one year after termination of her employment, is reasonable as to time and location"); *Evolution Markets, Inc. v. Penny*, 23 Misc.3d 1131, 889 N.YS.2d 882 (2009) (finding time restrictions of six months for the non-compete, nine months for the no-solicitation, and 14 months for the no-hire "reasonable and no greater than required to protect EvoMarkets' legitimate business interest."); *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63 (2d Cir. 1999) ("the reasonableness test was met because the duration of the covenant was relatively short (six months)"); *Silipos, Inc. v. Bickel*, 2006 WL 2265055 (S.D.N.Y. Aug. 8, 2006) ("New York courts routinely find one-year restrictions to be reasonable. *See, e.g., Crown It Servs., Inc. v. Koval-Olsen*, 782 N.Y.S.2d 708, 710 (N.Y. App. Div. 2004) (finding 'no

Robert W. Ottinger, Esq.
August 16, 2022
Page 2

serious dispute' that a one-year limitation is reasonable).").  Accordingly, it is beyond peradventure that the six-month duration for the non-compete period and the one-year duration for the non-solicitation period are *per se* reasonable under New York law.

It also cannot seriously be argued that the geographic scope of the non-compete is unreasonable.  To the contrary, where, like here, the business at issue is international in scope, New York Courts have regularly enforced restrictive covenants with no geographic limitations.  *See e.g. Evolution Markets,* 889 N.YS.2d 882 ("the lack of a geographic restriction is necessary given that Plaintiff's customers are from all over the world and the brokerage business is largely conducted over the telephone. . . . As such, 'any geographic limitation on the covenant's scope would obviate its usefulness to EvoMarkets.'"); *MasterCard International Inc. v. Nike Inc.*, 164 F.Supp.3d 592 (S.D.N.Y. 2016) (same) *; Messina*, 41 N.Y.S.3d 719 ("the absence of a geographic limitation seems reasonable under the facts and circumstances of this case, including: (a) the narrow and well-defined market in which Integra operates; (b) the worldwide scope of the market; (c) the nature of Messina's sales and marketing activities, which are conducted largely by email and telephone; and (d) the relatively brief duration of the covenant.").  Given this line of authority, it would be perfectly reasonable to enforce a non-compete with no geographic limitations.  The non-compete provisions to which your clients are bound, however, only restrict them from competing with Wiley Edge in the New York Metropolitan Area or within 50 miles therefrom.  Considering that your client's business is based in North Carolina, this hardly seems unreasonable or oppressive.  For the same reasons, the non-solicitation provisions are reasonable in scope, as they seek only to prevent Mr. Wascak and Mr. Rolle from poaching Wiley Edge's existing clients or prospective clients that were generated through the efforts of Mr. Wascak and Mr. Rolle.

Your attempt to demonstrate that the restrictive covenants are unenforceable because Mr. Wascak and Mr. Rolle were not in unique positions and/or did not have access to confidential and trade secret information, is based on a self-serving and inaccurate factual narrative.  Among other things, your letter completely ignores the significance of Mr. Wascak's and Mr. Rolle's respective roles and responsibilities, and the important confidential and trade secret information that each were privy to -- and, in many instances, helped create.  For example, as the head of Global Business Development, Mr. Wascak had access to every single piece of confidential and trade secret information relating to the Company's sales and marketing practices.  Most significantly, Mr. Wascak had direct access to the curriculum employed by Wiley Edge, which curriculum was the product of years of effort and significant expense and which clearly constitutes confidential trade secret information.  Mr. Wascak certainly knows and understands this, given that he was directly involved in crafting and fine-tuning the curriculum as it relates to specific requests and requirements of the Company's clients and used Wiley Edge's unique curriculum to attract and obtain clients for the Company.  To that end, Mr. Wascak was privy to confidential information of the Company's clients as well as the confidential pipeline of prospective clients generated from the work of Mr. Wascak's team (including Mr. Rolle and those that worked under him).  Moreover, as part of the executive management team, Mr. Wascak was privy to confidential, internal discussions regarding the strategic direction of the Company, including a recent business initiative relating to minority and underserved communities that Mr. Wascak and Mr. Rolle clearly have made the precise focus of their competing business.  In short, it is patently absurd to claim

Robert W. Ottinger, Esq.
August 16, 2022
Page 3

that Mr. Wascak -- the individual responsible for global business development, including the development and negotiation of nearly every contract between the Company and its existing clients -- did not have access to highly confidential and proprietary information and trade secrets.

It is equally absurd to claim that Mr. Rolle, who created and oversaw the team within the Company that was responsible for generating leads for new clients, did not have access to highly confidential and proprietary information. Indeed, Mr. Rolle developed certain of that information when he was tasked with creating and overseeing the Company's inside sales team. Mr. Wascak's and Mr. Rolle's creation of and access to the aforementioned confidential, proprietary and trade secret information more than justifies the enforceable six-month, geographically-limited non-compete provision that both Mr. Wascak and Mr. Rolle have already agreed is reasonable and necessary to protect the interests of the Company.

The non-solicitation provisions are equally enforceable[1]. Contrary to your assertion that the Company's client list is not entitled to trade secret protection, the Company's existing clients and pipeline of potential clients were created through a robust and proprietary process with the aid of industry expertise and insight and are, therefore, confidential. While certain of the Company's clients may be well-known financial institutions, the key individual contacts at the Company's potential clients, and the client's staffing and training needs, are utterly opaque and not "readily discoverable through public sources." Indeed, that information was developed, in large part, through the work of Mr. Wascak and Mr. Rolle at great cost and expense to the Company. Setting aside the confidential nature of the Company's clients and the clients' needs, where a salesperson develops customer goodwill for the benefit of his employer and through the resources of his employer, the employer has a legitimate business interest in protecting that good will. *See e.g. Adecco USA, Inc. v. Staffworks, Inc.*, 2020 WL 7028872, *8 (N.D.N.Y. September 15, 2020) (enforcing non-compete and non-solicitation provisions in the staffing industry in part because of the importance of the customer relationships in that industry). Here, using the insight, time and resources of the Company, Mr. Rolle and Mr. Wascak developed key relationships with decision makers within the Company's clients and potential clients. The enforcement of Mr. Wascak's and Mr. Rolle's restrictive covenants is necessary and would serve the very purpose behind restrictive covenants: preventing key employees like Mr. Wascak and Mr. Rolle from taking and deploying highly confidential and trade secret information, obtained solely by virtue of their employment with the Company, and gaining an unfair competitive advantage.

In addition to violating their restrictive covenants, the Company has strong reason to believe that Mr. Wascak and Mr. Rolle have violated their duty of loyalty to the Company and are subject to liability under the faithless servant doctrine. It is our understanding that Mr. Wascak and Mr. Rolle incorporated their new business on July 28, 2022. And, based on press releases issued on July 29, 2022, we understand that Mr. Wascak and Mr. Rolle secured five million dollars of outside funding for their new business. That type of financing simply does not happen overnight

---

[1] Your letter does not dispute the validity and enforceability of the non-solicitation provision as it relates to employees of Wiley Edge. Accordingly, we assume that Mr. Rolle and Mr. Wascak agree that the non-solicitation provision is enforceable and will refrain from violating that provision. Please confirm that Mr. Rolle and Mr. Wascak have fully complied, and will continue to fully comply, with the non-solicitation provision relating to Wiley Edge employees.

Robert W. Ottinger, Esq.
August 16, 2022
Page 4

and typically takes months of planning and negotiation. Accordingly, the only reasonable inference to be drawn from the timing of the launch of HTD Talent is that Mr. Wascak and Mr. Rolle had been planning and preparing to open HTD Talent, a direct competitor of the Company, for months before they resigned from the Company. That exact type of conduct constitutes a breach of Mr. Wascak's and Mr. Rolle's obligations not to compete with Wiley Edge while employed by the Company, constitutes a breach of their duty of loyalty to the Company and warrants liability and forfeiture under the faithless servant doctrine. *See e.g. Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F.Supp.2d 489 (S.D.N.Y. 2011) (finding forfeiture appropriate where defendants, among other things, "took affirmative steps to hamstring Pure Power and at no point disclosed their plans to open a competing business, using many of Pure Power's ideas and concepts"). Moreover, such conduct belies the claim in your letter that Mr. Wascak and Mr. Rolle have not engaged in wrongful conduct.

Should Mr. Wascak and Mr. Rolle fail to confirm by the close of business on Thursday, August 18, 2022, that they will fully comply with the restrictive covenants that they agreed to, the Company will be forced to take action to enforce those agreements and seek relief from Mr. Wascak and Mr. Rolle for their other wrongful conduct. We further note that the agreements executed by Mr. Wascak and Mr. Rolle require them to pay the legal fees associated with the Company's efforts to enforce the restrictive covenants.

Please note that Ms. Grazioso's August 8, 2022 letters to Mr. Wascak and Mr. Rolle, respectively, placed each on notice of potential litigation. As such, at that point, your clients were obligated under federal and state law to preserve all information relating to the substance of any such potential litigation. That information includes, but is not limited to, any documents and correspondence regarding the planning and preparation for, establishment, financing and launch of HTD Talent. Correspondence includes any emails, text messages, or any other electronic communications, all of which shall be preserved. We hereby request that you place the source of HTD Talent's financing on notice of its obligation to preserve documents and information relating to the negotiation and execution of any agreements related to the financing of HTD Talent.

This letter is sent without waiver of any of the Company's rights or remedies, at law or in equity, all of which are hereby expressly preserved.

Very truly yours,

*/s/ Jason H. Kislin*

JASON H. KISLIN

Cc (via email):  Kristy Grazioso, Esq.